1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 552-2370
Email: miles@milesclarklaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| Jamaa Reeves, | Civil Action No.: |
| Plaintiffs, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| Equifax Information Services, LLC; and Financial Health Federal Credit Union, | |
| Defendants. | **JURY TRIAL DEMANDED** |

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Marion County, State of Indiana and because Defendants are subject to personal jurisdiction in Marion County,

State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

## PARTIES

4.     Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

5.     Plaintiff Jamaa Reeves ("Plaintiff") is a natural person residing in Marion County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.     Defendant Financial Health Federal Credit Union ("FCU") is a corporation doing business in the State of Indiana.  FCU is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7.     Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Equifax is a corporation which does business in the State of Indiana.

8.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations, FCRA Liability, and Industry Reporting Guidelines*

9.     Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

11. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

12. Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft. To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request. 15 U.S.C. § 1681g.

Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period.  *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

13.    The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file.  15 U.S.C. § 1681i(a).  Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

14.    Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b).  This reinvestigation must conclude no later than 30 days after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure.  *See* 15 U.S.C. § 1681i.

15.    If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

16.    If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

17.    The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6).    As part of this notice of results of

reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

18.    Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

19.    CRAs and furnishers also must comply with industry reporting guidelines from the Consumer Data Industry Association ("CDIA"), in the form of industry reporting standards called the "Consumer Reporting Resource Guide" or "Metro 2."  The CDIA's standards are composed by only some credit-reporting stakeholders – i.e., reporting agencies and furnishers, but not consumers on whom data is reported – and as such their guidance often favors those parties at the consumers' expense.  Nevertheless, courts have held that a furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted).  *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

20.    On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

21.    Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

22.    This is true both under Metro 2, and if Metro 2 does not apply.  For example, even if Metro 2 does not apply, then Defendants were required to report historically accurate information, pursuant to 15 U.S.C. §§ 1681g, 1681e(b), 1681i and 1681s-2(b).

23.    The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

### *Plaintiffs' Bankruptcy Filings*

24.    On October 19, 2017, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 17-07977-RLM-13 ("Bankruptcy"). BK ECF No. 1.

25.    In the bankruptcy petition ("Petition"), Plaintiff included several unsecured obligations from FCU on Schedule F.[1]

---

[1] Two of the three FCU interests were listed with a $0 balance owed.  *See* BK Doc. 1, at 36.

26. In Plaintiff's controlled plan of reorganization, Plaintiff provided for disposition of unsecured accounts. *See* BK Doc. 35. On June 7, 2021, Plaintiff earned a bankruptcy discharge, which included the FCU accounts. *See* BK Doc. 53.

### Procuring of Credit Reports and Submission of Disputes

27. Pursuant to Section 1681g, Plaintiff requested and, between September 28 and November 1, 2021, received consumer reports from Equifax ("Equifax Initial Credit Report"), as well as reporting agencies Experian and Trans Union.

28. On December 10, 2021, and pursuant to Section 1681i, a written dispute letter for Plaintiff was sent to Equifax regarding disputes of accuracy of the reported information on the Credit Reports, as specified below ("First Equifax Dispute Letter").

29. On November 17, 2022, and pursuant to Section 1681i, a written dispute letter for Plaintiff was sent to Equifax regarding disputes of accuracy of the reported information on the Credit Reports, as specified below ("Second Equifax Dispute Letter").

30. All of the Credit Reports and Reinvestigations were "consumer reports" under 15 U.S.C. § 1681a(d).

31. All iterations of the Credit Reports fell under than ambit of 15 U.S.C. § 1681g.

### FCU FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)

32. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

33. On Plaintiff's Equifax Credit Report, FCU inaccurately reported a balance of $422, an amount past due of $5,372, a date of major delinquency in February 2, 2018, and a charge-off amount of $445. All of this information was inaccurate, as the account should have reported, at minimum, as having been discharged in bankruptcy, with a $0 balance and $0 past due. Further, the date of major delinquency should have been no later than the date

Plaintiff filed for bankruptcy.  These inaccuracies regarding amounts due mistakenly suggested that Plaintiff had not in fact obtained a discharge of these amounts, while the inaccuracy regarding Plaintiff's delinquency date suggested her tradeline would continue to report negatively longer than it would have otherwise.

34.    FCU's reporting was not only patently incorrect, but also materially misleading because the monetary amounts suggested the interest had been discharged, when it had not been, and could mislead prospective creditors the by suggesting the FCA account had not been discharged and in fact went delinquent at a time after Plaintiff's Bankruptcy was filed.

35.    In the First and Second Equifax Dispute Letters, Plaintiff placed FCU on notice of the applicable inaccuracies listed above, and requested that the information be corrected.

36.    Upon information and belief, upon receiving the applicable Disputes, Equifax notified FCU of the applicable disputes based on its mandatory statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

37.    FCU was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

38.    A reasonable investigation by FCU at any point following the Disputes would have indicated Plaintiff's FCU account was discharged in bankruptcy, with no balances past due or owing, and a date of first delinquency no later than the date of Plaintiff's bankruptcy petition.

39.    However, there is no indication ever made all of the corrections Plaintiff requested.  There is no evidence of any Reinvestigation from Equifax sent to Plaintiff in connection with the First Dispute at all.

40. Plaintiff attempted to dispute FCU's reported information with Equifax again in the Second Equifax Dispute Letter, identifying the same errors and requesting their correction. However, as with Plaintiff's first Equifax dispute, there is no indication that Equifax sent a reinvestigation to Plaintiff.

41. By failing to correct Plaintiff's information, FCU ensured Plaintiff's information would continue to report inaccurately and inconsistently.

42. These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to FCU.

43. FCU repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

44. FCU failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

45. Due to FCU's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

46. FCU's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful. FCU knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, FCU's conduct was negligent.

47.    Plaintiff has suffered concrete and imminent harm to creditworthiness. Plaintiffs' credit reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding Plaintiff's disputes, which on information and belief continued after the dispute should have been resolved. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

48.    Also as a result of FCU's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging FCU's inaccurate reporting, lost time, and damage to Plaintiff's creditworthiness. Plaintiff's credit reporting issues with FCU have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

49.    FCU's conduct at least negligent, but also willful. Plaintiffs are, accordingly, eligible for statutory damages.

50.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**EQUIFAX FCRA VIOLATIONS – 15 U.S.C. §§ 1681E(B), 1681I, 1681G**

51.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

52.    As noted above, Equifax was sent a pair of disputes regarding Plaintiff's reporting – the First and Second Equifax Dispute Letters – but it failed to respond to Plaintiff at all by providing a timely 1681i written reinvestigations in connection with Plaintiff's disputes of the Ally, Centra, or Ocwen tradelines.  Consequently, Equifax violated 15 U.S.C. § 1681i(a)(2).

53.    Equifax also failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. § 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.

54.    Equifax's reporting was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff, because it reported inaccurate "major delinquency" dates, as well as cast doubt about when Plaintiff's payment obligations would cease.  In addition, reporting from other agencies Experian and Trans Union correctly reported the account with a $0 balance.  These inaccuracies would have caused an ordinary consumer like Plaintiff to wonder how long an account would continue reporting negatively.  Accordingly, Equifax violated 15 U.S.C. § 1681g.

55.    On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because the reported dates of major delinquency varied and the account was not properly reporting in bankruptcy, even though reporting agencies Experian and Trans Union correctly reported the account with a $0 balance.  These internal inconsistencies would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting across tradelines.  This violated 15 U.S.C. § 1681e(b).

56.  Plaintiff has suffered concrete and imminent harm to creditworthiness.  Plaintiffs' credit reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding Plaintiff's disputes, which on information and belief continued after the dispute should have been resolved.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

57.  Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, lost time, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Equifax have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

58.  Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to multiple disputes, and continued to report inconsistent information; therefore, Plaintiff is entitled to statutory damages.  At minimum, Equifax's violations were negligent.

59.  Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

//

# CAUSES OF ACTION

### FIRST CAUSE OF ACTION – PLAINTIFF VS. FCU
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)

60.    Plaintiff realleges all paragraphs above as if realleged herein.

61.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

62.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

63.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

64.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### SECOND CAUSE OF ACTION – PLAINTIFF VS. EQUIFAX
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 168IE(B), 1681I, 1681G

65.    Plaintiff realleges all paragraphs above as if realleged herein.

66.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

67.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

68.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

69.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the Court grant Plaintiff the following relief against each Defendant on Counts 1-2:

**FIRST AND SECOND CAUSES OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Huntington for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 20, 2023

Respectfully submitted,

/s/ Miles N. Clark, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorney for Plaintiffs

- 14 -